Filed 8/19/14  Keeney v. John Crane, Inc. CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RICHARD KEENEY et al., | B245739 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC457255) |
| JOHN CRANE INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court for Los Angeles County, Amy D. Hogue, Judge.  Affirmed.

Farrise Firm and Simona A. Farrise; The Arkin Law Firm and Sharon J. Arkin for Plaintiffs and Appellants.

Hawkins Parnell Thackston & Young, Robert E. Thackston, Barry R. Schirm and Julia A. Gowin for Defendant and Appellant.

The trial court sanctioned the Farrise Firm and attorney Carlos Guzman (collectively, the Firm) in the amount of $1,000 for violating a protective order governing financial information provided to the Firm by defendant John Crane Inc. (Crane) for possible use in the punitive damages phase of a trial in which the Firm represented the plaintiffs, Richard Keeney and Howard J. Garcia. The Firm and plaintiffs[1] appeal from the order imposing sanctions, contending that the Firm did not violate the protective order when it provided another law firm with the deposition transcript of plaintiffs' economics expert, Robert Johnson, in which Johnson referred to the financial information provided by Crane. Crane cross-appeals, contending that the trial court erred by discharging the contempt proceedings and that the order imposing sanctions must be reversed and the matter remanded because the trial court did not specify in the order the circumstances justifying the sanctions.

We affirm the order imposing sanctions. In short, we conclude as follows. The court's oral protective order of January 17, 2012, made in conjunction with Crane's production of documents evidencing its financial condition, covered only five pages of documents which were appended to the Johnson deposition transcript. Thus, dissemination of the transcript without the protected documents did not violate that order. However, the court's written protective order of January 24, 2012, which was served on the Firm on February 14, 2012, and was read into the record at a February 28, 2012 hearing at which the Firm was present, stated in relevant part: "Any party or agent acting in concert with a party must refrain from disclosing information from deposition and transcript of Robert

_____

[1] We note that although the notice of appeal was filed on behalf of plaintiffs, the Farisse Firm, and Guzman, the order at issue sanctions only the Farisse Firm and Guzman. Therefore, we treat the appeal as having been brought only on behalf of the sanctioned parties.

2

Johnson, per Civil Code 3295." When the Firm transmitted Johnson's deposition transcript to another law firm on or about May 1, 2012, it violated the January 24, 2012 order, and the trial court properly imposed a monetary sanction for that violation. As to Crane's cross-appeal, the challenged order discharging the contempt proceeding is not appealable (we decline to treat the appeal as a petition for writ of mandate), and Crane's challenge to the sufficiency of the sanctions order is unavailing because Crane has no standing to appeal from that order, and in any event the order is sufficient.

## BACKGROUND

We set forth in detail the procedural history leading to the imposition of sanctions against the Firm because there was much confusion regarding the scope of the protective order at issue. That confusion arose because Crane's counsel told the court it was going to produce documents subject to a protective order but counsel failed to actually obtain a written protective order, and the trial court assumed when it ordered counsel to turn over those documents "under the protective order" that an actual written order was in place. In fact, no enforceable protective order existed until more than a month after the documents were produced.

A. *Crane Produces Documents Containing Private Financial Information*

On January 17, 2012,[2] the jury was deliberating in the first phase of the trial in plaintiffs' lawsuit against Crane. A few days earlier, the trial court had ordered Crane to produce financial records in the event the jury returned with a verdict finding that plaintiffs were entitled to punitive damages. An attorney for Crane,

---

[2] Further references to dates are to the year 2012, unless otherwise specified.

Mr. Schirm, appeared before the court on January 17 and stated, "I have the documents the court requested. It was my understanding from discussions last week that we would still be producing them subject to a protective order so that they weren't going to be just randomly disseminated. [¶] [Plaintiffs' counsel, Ms. Farrise] can certainly share them with her economist." After a short discussion concerning how the documents were generated, the court stated, "All right, well, then let's have you turn them over under the protective order to Ms. Farrise, five pages. And then we'll take up whatever we take up with them at another time." There was no discussion as to the scope of the "protective order" at that time. In fact, the parties admit there was no written or formal protective order in place when the documents were turned over.

B.     *Crane Seeks to Protect the Deposition Transcript of Plaintiffs' Economic Expert Witness*

The Firm provided the documents to plaintiffs' economic expert witness, Robert Johnson, who was deposed by Crane on January 19. During the deposition, Johnson testified about the contents of the documents produced on January 17. On January 24, Crane filed an ex parte application to seal the transcript of Johnson's deposition. At the ex parte hearing that same day, the trial court stated that the deposition transcript is "subject to a protective order between and among the parties," and that it had no reason to seal a transcript unless it is filed with the court. Crane's counsel explained that Crane was concerned that someone could contact the deposition's court reporter and obtain a transcript containing Crane's sensitive financial data, because the court reporter is not a party to the protective order. The court agreed to issue a protective order that would apply to the court reporter. The court stated, "the order is that all agents and employees and persons working under contract in connection with this litigation, including the H.G.

4

Litigation Reporting Service, is bound by the court's protective order issued in this case under section 3295 of the Civil Code, maintaining in confidence John Crane's information with respect to its financial condition." Because no one from the Firm appeared at the hearing on Crane's ex parte application,[3] the court ordered Crane to give notice.

Crane filed and served on the Firm a notice of ruling on its ex parte application the following day, January 25. The notice stated: "The protective order previously issued by the court regarding the financial records produced by John Crane Inc. in response to the court's order was extended to the deposition transcript of Robert Johnson, taken January 19, 2012. The parties, their counsel, their experts and their representatives, which would include HG Litigation Services (which was the reporter for the deposition of Mr. Johnson), are to treat the deposition transcript as confidential and not distribute [the] transcript to anyone outside of this case." The notice of ruling did *not* attach a copy of the minute order from the ex parte hearing.

C. *The Trial Court Makes Clear that the Deposition Transcript Cannot be Disclosed to Others Outside the Litigation, After a Rough Draft Was Disclosed*

The Firm, on behalf of plaintiffs, filed objections to and a motion to vacate the order regarding the deposition transcript, as well as a motion for reconsideration of the order, arguing that Crane had not given proper notice of its intent to appear ex parte, and did not serve its ex parte papers on plaintiffs until the

---

[3] Although plaintiffs later asserted that Crane failed to give proper notice of its intent to appear ex parte before the trial court on January 24, Crane's counsel filed a declaration stating that he sent plaintiffs' counsel a letter (which is attached to the declaration) informing her of Crane's intent to appear.

5

day after the January 24 hearing. In a declaration filed in support of plaintiffs' motion for reconsideration, attorney Guzman stated that before he received the notice of ruling, he already had provided to other counsel a rough copy of the deposition transcript (without the five pages of protected documents produced on January 17).

At the hearing on plaintiffs' motion for reconsideration, the trial court began by noting that it did not grant Crane the relief it requested in its ex parte application -- which sought an order sealing the deposition transcript -- but it instead "ruled that the court reporter was embraced by the protective order that otherwise applied to any financial information that John Crane was providing. [¶] All of this was discovery in anticipation of the possibility that the jury would find evidence of malice, oppression or fraud by clear and convincing evidence. At the end of the day, the jury did not." When counsel for plaintiffs asked the court to clarify exactly what the court believed its January 24 order was, the court read into the record its January 24 minute order: "'The court deems application a request for protective order. Protective order granted as follows: Any party or agent acting in concert with a party must refrain from disclosing information from deposition and transcript of Robert Johnson, per Civil Code 3295. The court notes this order includes H.G. Litigation Services.'" The court explained, "So that's what I did. I didn't seal anything, I just ruled that the protective order that already covered the parties to the action also specifically embraced the court reporter."

After plaintiffs' counsel noted that, as set forth in plaintiffs' moving papers, a rough copy of the deposition transcript already had been provided to some other counsel before January 24, the court turned to Crane's counsel and asked, "weren't the counsel bound by a protective order from the get-go on all of this?" Counsel said that was correct. Plaintiffs' counsel argued that, just because there was a protective order in place, it did not mean that the entire deposition transcript was

6

within its scope.  The court responded, "Yes, that may be true.  All I did was tell the court reporter she's bound by a protective order.  That was the extent of my order.  [¶]  And I agree with you that the protective order would only cover the financial information. . . .  But if there was transmission of the financial information, . . . then there may be a little problem here."  In response to plaintiffs' counsel's assertion that the protective order did not cover financial information that is publicly available, the court stated, "Well, I don't disagree with you, but I don't know what's in the deposition.  I simply ruled the protective order embraces the court reporter.  So I didn't parse what the protective order means."  The court then denied plaintiffs' motion for reconsideration.

D.    *Crane Seeks an Order to Show Cause re Contempt*

On May 9, plaintiffs filed an ex parte application seeking clarification of the trial court's January 24 order.  Plaintiffs asked the trial court to specify whether (1) the entire deposition transcript is subject to the court's protective order (which plaintiffs stated is Crane's position); (2) only the five pages of documents Crane produced on January 17 are subject to the protective order (which is plaintiffs' understanding); or (3) some other variation of the protective order was intended, making some parts of the transcript protected and other parts not protected.

Crane filed an opposition to plaintiffs' ex parte application on May 10, stating that plaintiffs had already violated the protective order by providing the entire deposition transcript to third party plaintiffs' firms involved in litigation against Crane in other jurisdictions.  The following day, May 11, Crane filed an ex parte application for an order to show cause re contempt and an order for relief to alleviate the violation of the protective order.  Crane stated that it was aware of at least one instance in which the Firm violated the protective order, because a law firm that represents the plaintiffs in a Delaware lawsuit against Crane served an

7

expert designation on April 30 identifying Johnson as their expert witness in the event of a punitive damages phase, and indicated that the plaintiffs would provide Johnson's deposition testimony from this case. Crane asked the court to order the Firm to, among other things, identify all persons to whom the Firm disclosed the protected material and send notices to everyone who had access to the protected material stating that the materials were disseminated in violation of a protective order and that all copies must be destroyed. In addition, Crane asked the court to impose on the Firm a fine of $1,000 and imprisonment of five days for each act of contempt.

On May 11, the trial court held a hearing on plaintiffs' ex parte application for clarification and Crane's ex parte application for an order to show cause re contempt. Addressing the application for clarification of the January 24 order, the court noted that Crane's stated concern at the January 24 hearing -- i.e., that the court reporter for the Johnson deposition might sell transcripts to interested parties -- "seemed a reasonable concern to me, given that we were talking about a deposition in anticipation of the possibility of punitive damages . . . where the confidential financial information of a company might or might not be disclosed." The court indicated that what it intended to do by its January 24 order "was simply to say that . . . Mr. or Madam Court Reporter, you are bound by the same protective order." The court continued, "Now, I don't know what your protective order says. I don't know if it covers everything in the deposition. I don't know anything but that. And so I didn't parse the protective order, it just seemed reasonable and logical to me that somebody working as a court reporter on behalf of an attorney bound by a protective order, just like a paralegal or an expert or anybody else, should be embraced by the protective order."

The Firm argued that the court's description of the January 24 order was consistent with the Firm's understanding, and that the only thing embraced by the

8

protective order were the few pages of documents that Crane produced on January 17, which the Firm never disseminated. Crane's counsel disagreed with the Firm's understanding. Counsel argued that when Crane produced the documents, it asked for a protective order regarding the financial information (i.e., the information disclosed in the documents, rather than just the documents themselves), and the court agreed to the protective order. It appears from the court's questioning of Crane's counsel that the court believed there was an existing protective order in place on January 17 that would apply to the information in the documents Crane produced that day, and that the January 24 order extended that protective order to the court reporter.

In response to the Firm's assertion that their disclosure of the deposition transcript and Johnson's expert witness report did not violate the protective order because Johnson's testimony and report were based upon publicly available information, rather than information from the protected documents, Crane pointed to places in the transcript and report in which Johnson referred to the figures in the protected documents. After reviewing parts of the transcript, the court continued the hearing on Crane's request for an order to show cause re contempt, and ordered the parties to meet and confer to determine whether the numbers Johnson cited in his deposition and report could have come from publicly available information.

At the continued hearing, the trial court began by asking if anyone had provided the court with the protective order. After Crane's counsel explained that "the protective order was made during the court proceedings on the record," the court said, "So I have this fantasy that there's a written 10-page protective order." After discussions with counsel for both sides regarding the materials that had been provided to the court for the hearing, the court took a short recess to review the materials. Upon returning to the bench, the court summarized the proceedings leading up to the current hearing. The court noted that, while the jury was

9

deliberating, the court ordered Crane to produce the information regarding its financial condition under Civil Code section 3295, so the parties would be ready to proceed on the punitive damages phase if the jury made the requisite findings. The court continued: "And the defense complied with that to whatever extent they complied with it. . . . But there was a discussion where Mr. Schirm [Crane's counsel] outlined what he thought the court ought to do in terms of a protective order, and he said basically this shouldn't be randomly disseminated. I mean if they want to give it to their economist or their experts or their internal people, fine, and I agreed with that and then issued a protective order. [¶] And I wasn't very specific about the nature of the protective order. I had really just assumed all along there was a written protective order among you that I was just dovetailing into, but that's now clearly not the case. [¶] So in my mind, a protective order means what Mr. Schirm was talking about. It means that the documents are restricted to the use by their attorneys and anybody they need to assist them in preparing for trial, such as experts or court reporters and whomsoever, but not persons outside the litigation, and not for anyone for any purpose other than the pending litigation."

The court then addressed the January 24 hearing and order: "On the 24th, Mr. Schirm came in ex parte as a bit of an afterthought. He was concerned that the court reporter might be asked to provide a transcript by other interested parties in unrelated litigation and wanted to make sure, as I understood it, that that didn't happen. [¶] And so I said a little bit more than I had the first time about what the protective order was, and I basically confirmed that the plaintiff and anybody acting in concert with or as an agent of the plaintiff . . . had to protect the information that was produced pursuant to [Civil Code section] 3295. [¶] And in my mind . . . that's what I thought the protective order was about, not necessarily the entire deposition, but whatever it was you were producing under 3295 clearly had to be subject to a protective order."

10

The court concluded that Crane's showing that particular numbers from the protected documents were addressed in Johnson's deposition and were not available through publicly available documents was sufficient for the court to issue an order to show cause.

E.     *The Trial Court Issues an Order to Show Cause re Contempt*

On June 12, the trial court issued an order to show cause re contempt. In the order, the court stated that on January 17, the court granted Crane's request that the documents it produced to plaintiffs would be "subject to a protective order ensuring that they would not be 'randomly disseminated,' i.e., that they could be shared with Plaintiff's [*sic*] economist but not otherwise distributed to third parties." The court also stated that it issued a minute order at the January 24 hearing on Crane's ex parte application to seal the transcript of Johnson's deposition, stating that it deemed the application a request for a protective order and that it granted the protective order as follows: "Any party or agent acting in concert with a party must refrain from disclosing information from deposition and transcript of Robert Johnson per Civil Code 3295."[4] Finally, the court stated that Crane contends, and the Firm does not dispute, that a copy of the deposition transcript (without the protected documents, which were Exhibit 2 to the deposition) was transmitted to a third party law firm not involved in this case.

The court ordered plaintiffs and the Firm "to show cause why the court should not order Plaintiffs and/or the Farisse Firm to pay sanctions in the amount of $1,000 for willful violation of the court's January 17, 2012 and/or January 24, 2012 protective order by disclosing information from Exhibit 2 of the Johnson

---

[4]     The court noted that plaintiffs did not appear at the hearing on Crane's ex parte application, but that there was no dispute that Crane served a notice of ruling on January 25; the court quoted the text of the notice of ruling.

11

deposition (the 'Protected Information')." In addition, the court ordered plaintiffs, the Firm, and any agent or employee of plaintiffs or the Firm who disclosed the Protected Information to any person or entity other than an employee of the Firm, Johnson, or a third party professional retained by the Firm to provide services in connection with plaintiffs' prosecution of this case to submit a declaration, signed under penalty of perjury, (1) identifying the person(s) or entit(ies) to whom the disclosure was made, setting forth the details of all communications with each recipient about the Protected Information, and setting forth his or her knowledge whether any recipient remains in possession of or further disseminated the Protected Information; and (2) explaining whether he or she saw the watermarks on Exhibit 2 of the Johnson deposition (which stated "Subject to Protective Order Keeney v. John Crane Inc."), was aware of the court's January 17 and/or January 24 protective orders, and was aware of Crane's January 25 notice of ruling. In addition, the court ordered that, to the extent the declarant contends the Protected Information that was disclosed to third parties was otherwise publicly available, the declarant must identify and describe the sources for that information, attaching copies of the publicly available information if possible. Finally, the court ordered each declarant to state whether each of his or her disclosures was a willful or inadvertent violation of the court's order, and provide all facts and circumstances relevant to the question whether the disclosure was willful or inadvertent.

On July 2, Guzman filed a declaration on behalf of the Firm in response to the court's order. Guzman stated that the Firm objects to the order compelling submission of declarations, contending that the order violates the Fifth Amendment, and is beyond the authority of the court under the statutes governing contempt proceedings and discovery in criminal cases. Guzman also stated that the Firm objects on the ground that the scope of the protective order was unclear, and was not made clear until after the alleged violation occurred. Notwithstanding

12

those objections, Guzman stated that the Firm did not disclose to anyone outside the Firm or Johnson's office the five pages of documents Crane produced on January 17. The declaration also stated that "the Farrise Firm, responds further upon information and belief as follows: that on May 1, 2012, a copy of the final transcript of the Deposition of Robert Johnson was forwarded to Holly C. Peterson, Esq., Levy Phillips & Konigsberg, LLP, with exhibits thereto (but not including Exhibit 2 . . .)." The declaration indicated that Peterson originally was informed, "as was believed in good faith by plaintiffs' counsel at that time," that the transcript (without the five pages of documents) was not covered by the protective order, but that she was later informed, on May 7, that the Firm had received a letter from Crane's counsel contending that the protective order extended to the transcript. The declaration also stated that, at the Firm's request, Peterson deleted and destroyed all copies, both physical and digital, that she and her law firm possessed on May 7. Finally, the declaration stated that the Firm did not willfully violate the protective order because the scope of the order was not made clear until May 9, after the transcript was disclosed.

Crane filed a reply to Guzman's declaration, arguing that the declaration did not comply with the court's order to show cause, and asking the court to issue an order allowing Crane to conduct discovery into the violation, including by taking the depositions of attorneys at the Firm. On July 20, the trial court issued a further order to show cause, noting that Guzman's declaration failed to comply with the original order to show cause because it was written in the passive voice, did not identify who made the disclosure or engaged in conversations with the recipient, included statements made on information and belief, and did not address the subjective state of mind of any person who made the disclosure. The court ordered the Firm "to fully and completely show cause by faithfully addressing every

13

subpart of this court's June 12, 2012 Order in new declarations filed with the court on or before August 3, 2012."

The Firm did not file any further declarations, and the court set the matter for hearing. The court ordered the Farisse Firm and Guzman to appear in person at the hearing "to give testimony showing cause why the court should not issue an order compel[ling] the payment of $1,000 in sanctions for willful violation of the protective order."

Guzman appeared at the hearing on September 18. Guzman told the court that the declaration he filed on July 2 "is the full submission personally as well as on [behalf of] the Firm"; otherwise the Firm and its members would have to invoke their Fifth Amendment right not to incriminate themselves, given the quasi-criminal nature of contempt proceedings. After much discussion, the court indicated that it may be able to avoid the Fifth Amendment issue by converting the matter from contempt to sanctions, making it a civil proceeding rather than a quasi-criminal proceeding.

F.      *The Trial Court Discharges the Order to Show Cause re Contempt and Issues an Order to Show Cause re Sanctions*

A week later, on September 24, the trial court issued an order discharging the order to show cause re contempt and setting a hearing on sanctions under Code of Civil Procedure[5] section 177.5. The court ordered "the Plaintiffs, the Farisse Firm, and/or any agent working on behalf of the Plaintiffs or the Farisse Firm in this action to show cause why it and/or it's attorneys should not be sanctioned $1,000, under Code of Civil Procedure Section 177.5, for violation of this court's lawful court order(s), without good cause or substantial justification." The court

---

[5]      Further undesignated statutory references are to the Code of Civil Procedure.

14

identified the orders at issue as "this court's imposition of protective orders on January 17, 2012 (the court's order, in open court, that [Crane] turn over documents evidencing . . . its financial condition . . . subject to an order protecting the information from disclosure to third parties[)]; its January 24, 2012 order, set forth in [Crane's] notice of ruling, that 'any party or agent acting in concert with a party must refrain from disclosing information from the deposition and transcript of Robert Johnson . . . ;' and the court's reaffirmation of that order in its February 28, 2012 denial of Plaintiff's [*sic*] motion for reconsideration of the January 24, 2012 ruling." The court also included the same order it made in the original order to show cause re contempt regarding the submission of declarations from anyone who disclosed the protected information at any time after January 17.

When no declarations were filed within the time allowed, Crane filed a notification of plaintiffs' failure to comply, and asked the trial court to reconvene the contempt proceedings. On December 3, the trial court issued and served a minute order stating: "Court, having received no response to its 7-24-12[6] O.S.C., hereby sanctions attorney Carlos Guzman and the Farisse Law Firm in the amount of $1000.00 (one thousand dollars), payable to Los Angeles Superior Court on/before 12-31-12."

The Firm timely filed a notice of appeal from the December 3 order imposing sanctions. Crane filed a cross-appeal from the same order.

## DISCUSSION

A.    *The Firm's Appeal*

The Firm contends on appeal that the sanctions order must be reversed because (1) it did not violate the protective order because that order governed only

---

**6**    The court must have intended the September 24, 2012 order to show cause; there was no order issued on July 24, 2012.

the five pages of documents Crane produced; (2) sanctions cannot be imposed for disclosing public information; and (3) sanctions could not be imposed for failing to comply with the trial court's order to provide detailed declarations regarding the disclosure because the Firm fully responded to that order. We disagree with the first two contentions, and the third contention is irrelevant because, based on the order to show cause re sanctions, the sanctions were imposed solely for violating the protective order.

1.    *The Protective Order Prohibited Disclosure of the Deposition Transcript*

As noted, in its December 3 order to show cause, the trial court stated that the orders the Firm allegedly violated were the January 17 protective order (which the court described as its order that Crane turn over documents evidencing its financial condition subject to an order protecting the information from disclosure to third parties) and the January 24 order that any party or agent acting in concert with a party must refrain from disclosing information from the deposition and transcript of Robert Johnson. The Firm argues that the trial court mischaracterized the protective orders at issue. It contends that the January 17 order only prohibited the five pages of documents from being "'randomly disseminated,'" and did not, as the court stated, protect the *information* in those five pages. It also contends the January 24 order is not at issue here because that order merely extended the January 17 order to the court reporter. Although we agree with the Firm's interpretation of the January 17 order, we disagree with its characterization of the January 24 order.

As is clear from our detailed recitation of the relevant procedural history, until the hearing on Crane's ex parte application for an order to show cause re contempt, the trial court was operating under the incorrect assumption that the

16

parties had an existing, written, protective order in place on January 17 when the court ordered Crane to produce its financial documents. Thus, while the court may have believed its order to produce the documents "under the protective order" meant that the *information* in those documents was protected from disclosure to third parties not involved in the litigation, there actually was no such protection. At best, what Crane's counsel requested at that time, and what the trial court granted, was a protective order to prohibit the *documents* from being "randomly disseminated." There is no evidence that the Firm ever disclosed the documents to anyone outside of the litigation. Had Crane wanted the information in the documents to be protected from disclosure, it should have requested (or better yet, drafted) a specific protective order that explicitly set forth the scope of protection. (See *In re Marcus* (2006) 138 Cal.App.4th 1009, 1016 ["a writing is essential to avoid the uncertainty that can arise when attempting to enforce an oral ruling. Indeed, an 'order' is defined by statute as the 'direction of a court or judge, *made or entered in writing*'"].)

Our conclusion that the January 17 order only protected the documents from being randomly disseminated does not, as the Firm contends, require reversal of the sanctions order, because the trial court ordered the Firm to show cause why it should not be sanctioned for violating the January 17 order *and/or* the January 24 order. Contrary to the Firm's assertion, the January 24 order did not merely make the January 17 order apply to the court reporter. Although, as the Firm notes, the trial court repeatedly stated that its intention in issuing the January 24 order was to make the protective order apply to the court reporter for the Johnson deposition, the court believed the protective order was a written order that applied to the information contained in the five pages of documents. Thus, the court's January 24 *written* order stated: "Any party or agent acting in concert with a party must

17

refrain from disclosing information from deposition and transcript of Robert Johnson, per Civil Code 3295."

We note that the written order was not immediately served on plaintiffs or the Firm. Instead, Crane served a notice of ruling that did not attach a copy of the court's minute order. That notice of ruling did not constitute an order, however, and could not be the basis for the imposition of sanctions for its violation. (*Shpiller v. Harry C's Redlands* (1993) 13 Cal.App.4th 1177, 1179 ["A notice of ruling is not an order; an order is a document which contains a direction by the court that a party take or refrain from action, or that certain relief is granted or not granted [citations] and which is either entered in the court's permanent minutes or signed by the judge and stamped 'filed'"].)

The Firm was, however, served with a copy of the written order on February 14, when Crane served its opposition to plaintiffs' objection to and motion to vacate the January 24 order; a copy of the order was attached as an exhibit to the declaration of Crane's counsel. In addition, the trial court read the order into the record on February 28 at the hearing on plaintiffs' motion for reconsideration. Thus, the Firm had notice of the language of the order -- which prohibited "disclosing information from deposition and transcript of Robert Johnson" -- no later than February 28. Therefore, the Firm violated the court's written order (of which it had notice) when it transmitted the deposition transcript to another law firm on or about May 1.

2. *The Deposition Transcript Included Information From the Protected Documents*

The Firm contends that the imposition of sanctions for its disclosure of the Johnson deposition transcript was improper because Johnson "made clear in the deposition that he was testifying about publicly available information." While the

Firm is correct that Johnson stated that his opinion regarding Crane's financial condition was based upon publicly available information such as financial documents for Crane's corporate parent and testimony from a previous trial, there is no question that his deposition testimony included discussions of specific information taken from the documents produced on January 17 under Civil Code section 3295. The Firm argues that that information was not protected, however, because Crane "has never made a showing that the figures in the documents are private and confidential." This argument misses the point.

The trial court ordered the Firm (and its agents) not to disclose "information from deposition and transcript of Robert Johnson, per Civil Code 3295." If the Firm believed that the information from the documents produced on January 17 (and discussed by Johnson in his deposition) was publicly available and therefore should not be subject to a protective order, it could have made such a showing to the trial court and requested that the court vacate the protective order. What it could *not* do was simply ignore the court's order. By disclosing the deposition transcript, which included testimony about the contents of the January 17 documents, to an outside attorney, the Firm necessarily violated the January 24 order prohibiting the disclosure of information that had been produced under Civil Code section 3295. Therefore, the trial court did not abuse its discretion by imposing sanctions under section 177.5 for the Firm's violation of the January 24 order.

3. *The Trial Court Did Not Sanction the Firm For Deficiencies in its Declaration*

The Firm contends that the trial court's imposition of sanctions was improper to the extent the sanctions were based upon the Firm's purported failure to fully comply with the trial court's order to submit declarations from anyone who

19

disclosed the protected information, providing details regarding any such disclosure. We need not address the Firm's compliance or lack of compliance with that order, because there is no evidence that the trial court imposed sanctions based upon that order.

The trial court's order imposing sanctions stated that "[the] Court, having received no response to its [September 24] O.S.C., hereby sanctions [the Firm] in the amount of $1000.00." Although this order did not specify the conduct justifying the sanctions, the September 24 order to show cause provided that information. In that September 24 order, the court ordered the Firm to show cause why it should not be sanctioned $1,000 under section 177.5 for violating the court's orders, which the court identified as the January 17 and January 24 protective orders, as well as the court's reaffirmation of the January 24 order in its February 28 denial of plaintiffs' motion for reconsideration. The court did not issue any further order to show cause regarding the Firm's alleged failure to comply with the court's September 24 order. Therefore, there is no evidence to suggest that the court imposed sanctions for any conduct other than the Firm's violation of the January 17 and January 24 protective orders.

B.    *Crane's Cross-Appeal*

In its cross-appeal, Crane contends that (1) the trial court committed reversible error by discharging the contempt proceedings and (2) the order imposing sanctions against the Firm is void because it did not comply with section 177.5. These contentions require little discussion.

C.    *The Order Discharging Contempt Proceedings is not Appealable*

Crane's challenge to the order discharging the contempt proceeding is not properly before us, because the order is not appealable, and may be reviewed only

by way of a writ petition. (*John Breuner Co. v. Bryant* (1951) 36 Cal.2d 877, 878 ["It is well settled that orders and judgments made in cases of contempt are not appealable, and this rule has been held applicable both where the trial court imposed punishment for contempt and where the alleged contemner was discharged"].) Crane's argument that the prohibition on appealing contempt orders applies only in criminal contempt proceedings because it is "grounded in the double jeopardy clauses of the Fifth Amendment to the United States Constitution," and the instant case involves civil contempt, is wrong on both the law and the facts.

First, the instant case involves criminal contempt. As the Supreme Court explained in *In re Nolan W.* (2009) 45 Cal.4th 1217: "'Where the primary object of contempt proceedings is to protect the rights of litigants, the proceedings are regarded as civil in character. On the other hand, where the object of the proceedings is to vindicate the dignity or authority of the court, they are regarded as criminal in character even though they arise from, or are ancillary to, a civil action. [Citation.]' [Citation.] Civil contempt is a forward-looking remedy imposed to coerce compliance with a lawful order of the court. [Citation.] Civil contemnors hold the key to the jail cell in their own pocket, and can secure their release at any time by following the court's order. [Citations.] . . . On the other hand, so long as specific procedures are observed to safeguard due process, criminal contempt may be used to punish *past* conduct in violation of a court order. [Citations.] The object of such proceedings 'is to vindicate the dignity or authority of the court.' [Citation.]" (*Id.* at pp. 1236-1237; accord, *Wanke, Industrial, Commercial, Residential, Inc. v. Keck* (2012) 209 Cal.App.4th 1151, 1165 (*Wanke*).) In the instant case, Crane sought, and the trial court issued, an order to show cause re contempt to punish plaintiffs and/or the Firm for *past* conduct in

21

violation of a court order. In other words, Crane initiated criminal contempt proceedings.

Second, even if the proceedings had been for civil contempt, Crane's assertion that the prohibition on appealing contempt orders is grounded in the double jeopardy clause is incorrect. Crane misreads the case it relies upon for its assertion. In that case, *Wanke*, the court did not address whether an order discharging an order to show cause was an appealable order, because the matter was before the court on a writ petition. (*Wanke*, *supra*, 209 Cal.App.4th at p. 1163.) The court's discussion of double jeopardy related to the reason the court could not grant the relief requested in the writ petition -- i.e., that the order discharging the order to show cause re contempt be annulled and the trial court be directed to enter a judgment of contempt. (*Ibid.*) The court explained that this relief was precluded because the constitutional protection against double jeopardy applies in criminal contempt proceedings. (*Id.* at pp. 1163-1164.)

In short, there is no merit to Crane's assertion that the order discharging the contempt proceedings is appealable. As an alternative, Crane asks this court to exercise its discretion to treat its cross-appeal as a petition for writ of mandate. We decline to do so, because we already have denied Crane's petition for writ of mandate -- filed two weeks after Crane filed its cross-appellant's opening brief -- on the ground that the petition was not timely filed.

D.    *Crane Has No Standing to Appeal From the Order Imposing Sanctions*

Crane contends the order sanctioning the Firm is void on its face because it does not comply with section 177.5, which provides, in relevant part, that "[a]n order imposing sanctions shall be in writing and shall recite in detail the conduct or circumstances justifying the order." (Code Civ. Proc., § 177.5.) Crane has no standing to appeal on this ground, however, because it is not aggrieved by the

22

order's failure to comply with section 177.5. (*Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1026-1027.)

In any event, the trial court's failure to comply with section 177.5's requirement to specify in the sanctions order the conduct justifying the sanctions would not require reversal in this case. The purpose of the requirement "'is to fulfill the "rudiments" of due process required for governmental imposition of a penalty upon an attorney or party -- both for due process' own, constitutional sake and to ensure that the power conferred by the statute will not be abused. [Citations.] Moreover, in some cases the court's recitation will be an invaluable aid to a reviewing court determining whether the trial court abused its discretion in awarding sanctions. [Citation.]' [Citation.]" (*Caldwell v. Samuels Jewelers* (1990) 222 Cal.App.3d 970, 977.) Here, the trial court set forth in great detail the conduct justifying sanctions in its order to show cause. Thus, the aggrieved parties -- Guzman and the Farisse Firm -- received the notice required by due process, and this court had all the information necessary to determine whether the trial court abused its discretion in awarding sanctions. For reasons we have explained, we conclude there was no abuse of discretion.

23

## DISPOSITION

The order imposing sanctions is affirmed, and Crane's cross-appeal is dismissed.  The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


EDMON, J.*

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.